IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** : No. 1:07-CR-0312
:
**v.** : JUDGE SYLVIA H. RAMBO
:
**STEVEN A. VONEIDA** :

## M E M O R A N D U M and O R D E R

Before the court are motions *in limine* filed by the United States and by Defendant Steven Voneida. (Docs. 36, 34.) Defendant is charged with one count of violating 18 U.S.C. § 875(c). That section makes it a crime to transmit in interstate commerce "any communication containing any threat to kidnap any person or any threat to injure the person of another . . . ." *Id.* The communications that form the basis for the charge are statements made on Defendant's personal webpage on MySpace.com soon after the April 16, 2007, shootings at Virginia Polytechnic Institute and State University ("Virginia Tech"). Defendant's statements were posted in the early morning hours of April 18, 2007. No later than April 19, 2007, Defendant posted a photographic illustration centered upon the Virginia Tech shooter accompanied by a poem about the shooter, entitled "the Ballad of Cho Seung-hui." It is unclear to whom these posts were directed, if anyone, or whether they were made public to all MySpace users.

Defendant did not remove the content relating to the Virginia Tech shootings until April 27, 2007. Accordingly, this case is outside the factual realm of the vast majority of precedent regarding "threats" versus "speech" in that Defendant's comments were transmitted in interstate commerce from the date and time they were first posted to the date and time they were removed. They did not occur in a moment, like words being spoken; nor were they sent from one place to

another once and only once, like mailing a letter, broadcasting a message over television or radio, or even sending an email.  Rather, Defendant's comments were communicated, and had the potential to reach an audience, for at least nine days.  This is one of the ways in which speech on the internet, and on social networking sites in particular, challenges existing methods of legal analysis.  *See* Scott Hammack, Note, *The Internet Loophole: Why Threatening Speech On-line Requires A Modification of the Courts' Approach to True Threats and Incitement*, 36 Colum. J.L. & Soc. Probs. 65, 93 (2002).  Accordingly, the court requires additional information from the parties before ruling on certain motions *in limine*.  To that end, the court will hold a conference call with the attorneys of record on January 23, 2008, at 9 a.m.

    The motions are disposed of as follows:

    1) The United States' motion *in limine* is unopposed, thus Defendant is deemed not to oppose the relief requested therein.  *See* Loc. R. 7.6.  The evidence of Defendant's subjective intent to threaten and peaceable character that the United States seeks to exclude are irrelevant to the matter to be tried. Section 875(c) does not require the government to prove that Defendant intended his statements to be threatening or that he had the ability to carry out the threats. *United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994).  The only intent the government need prove is that Defendant knowingly sent the communication that transmitted the threat. *United States v. Cox*, 975 F.2d 264. 266 (6th Cir. 1992) *cited in Himelwright*, 42 F.3d at 782.  The United States' motion *in limine* (Doc. 36) is **GRANTED**.

2) Defendant's motion *in limine* has eight subparts seeking exclusion of various types of evidence. The court will address each in turn, grouping where appropriate.

Motion One. Defendant seeks to preclude the allegedly threatening statements made in a survey posted on his webpage because "no reasonable person could consider [Defendant's] statements to be threats" in the context in which they were made. (Doc. 34 ¶ 10.) Defendant acknowledges, however, that "[w]hether a speaker's language constitutes a threat is a matter for the trier of fact." (Doc. 35 at 5.) This aspect of the motion is **DENIED**. Whether the statements constitute a threat will be determined by the trier of fact, in the context in which the statements were made. *See United States v. Kosma*, 951 F.2d 549, 555 (3d Cir. 1991). The statements were made in the context of a seventy-five question survey. Thus, the entire survey is admissible to assist the jury in determining whether the statements were threats.

Motion Two. Defendant submits that the poem and accompanying photographic illustration, as well as certain reader comments thereon, all of which were posted on Defendant's MySpace page, should be excluded from evidence because "the poem is not alleged, and cannot be construed, to convey a threat in any manner." (Doc. 34 ¶ 15.) Further, he submits that the posting is irrelevant to the charge and will prejudice him by inflaming the jury. (*Id.* ¶ 16.) Disposition of this motion is **DEFERRED**. According to the facts available to the court, the photo illustration and the poem were on Defendant's webpage for the vast majority of the time that the allegedly threatening statements in the survey remained available. It is unclear to the court, however, whether the survey and the photo/poem were visible

at the same time, whether they were hyperlinked to one another, or whether they were in reasonably proximate internet-space to one another. If so, the photo/poem is admissible as relevant to determining context for the alleged threats made in the survey. *See Watts v. United States*, 394 U.S. 705, 708 (1969). Similarly, if the alleged threats and the photo/poem combination are closely linked within Defendant's webpage, the comments would be admissible as reader response to Defendant's speech, which is one of the factors that the fact-finder may consider in determining whether his speech was a true threat. *See Watts*, 394 U.S. at 708; *Kosma*, 951 F.2d at 555. The parties may further argue this point at the conference call.

        Motion Three. Disposition of this motion is **DEFERRED**.

        Motions Four and Five. Defendant prays that this court will preclude evidence of his juvenile delinquency adjudications for aggravated assault and recklessly endangering another person; his current charges pending for unlawful possession of firearm(s) and a small amount of marijuana, and any evidence that he actually possessed those items; and items seized at Defendant's home, pursuant to a search warrant, other than the computer allegedly used to post the communications that are the subject of the criminal complaint. Defendant avers that the government has entered a stipulation not to proffer any evidence on these topics. Accordingly, Defendant's motions four and five are **MOOT**.

        Motion Six. A student at Indiana University of Pennsylvania ("IUP") viewed the postings on Defendant's webpage and reported them to officials at Penn State Harrisburg. Defendant requests preclusion of the IUP student's email alerting the officials because it is irrelevant. (Doc. 34 ¶ 41.) Further, any reference to "how

the postings were discovered or reported to Penn State Harrisburg should be excluded as they serve only to confuse the jury, prejudice [Defendant] and highlight the concern expressed by the various institutions' personnel and the student who initially reported the postings." (*Id.* ¶ 42.)

As stated with respect to Motion Two, the audience response to Defendant's statements is relevant to whether his words were a "true threat." It is unclear how the IUP student came to view Defendant's statements, but on the facts alleged, she may have been a part of the intended audience for his words. Even if she was an unintended viewer, the context of the internet and social networking sites like Myspace.com may make her part of Defendant's audience regardless of his intent to reach *her* as opposed to others. As a part of his audience, her response to his comments is relevant and properly considered when evaluating whether they are "true threats." The allegedly prejudicial effect of her email, the complete contents of which are not before the court, is not outweighed by its probative value. Defendant's motion is **DENIED** as to the IUP student's response to Defendant's statements.

The question of the relevance and probative value versus prejudicial effect of the response of the officials at Penn State Harrisburg is a different matter, but one which went unaddressed in briefing. It is unlikely that these officials were part of the audience, intended or not, for Defendant's statements. Defendant's statements were brought to their attention by a third party, the IUP student. *C.f. United States v. Kelner*, 534 F.2d 1020, 1022-23 (2d Cir. 1976) (defendant caused his statement, broadcast by the independent decision of news editors, to be transmitted to its audience). Moreover, a threat does not have to reach its purported

5

target to be a complete crime under 18 U.S.C. § 875(c), so the government is not required to prove that officials at Penn State Harrisburg were aware of Defendant's statements or felt fear as a result thereof. *C.f. Himelwright*, 42 F.3d at 782. These factors weigh in favor of precluding evidence of the official response.

The effect of a "true threat" upon institutions required to take seriously even joking threats, however, is one of the evils that a statute like § 875(c) attempts to deter, *Kosma*, 951 F.2d at 556-57 (applying the scienter requirement under 18 U.S.C. § 871); *Kelner*, 534 F.2d at 1026 (§ 875(c)), and the response by other institutions like the Secret Service has been admissible as to context for alleged threats when threats are delivered directly, *Kosma*, 951 F.2d at 554 ("Because Kosma sent his letters directly to the President, the only audience for them was the Secret Service and the staff of the White House mailroom, and it is doubtful that they were laughing."). Disposition of this aspect of Motion Six is **DEFERRED**. The parties will be permitted to argue the point at the conference call.

Motion Seven. Defendant requests preclusion of additional documents and copies of posts from Defendant's MySpace page culled from Defendant's computer that are not related to the basis of the instant criminal complaint. The government did not oppose this motion and the evidence appears to be irrelevant. Accordingly, this motion is **GRANTED**.

Motion Eight. Last, Defendant seeks preclusion of "testimony regarding the Virginia Tech shootings" because "the prejudicial effect of [such evidence] will substantially outweigh any probative value it may have with regard to the context of [the] postings." (Doc. 34 ¶ 50.) "Undue focus on the shootings may evoke an emotional response and permit the jury to make a decision on improper

considerations." (*Id.* ¶ 51.)  This motion is **DENIED**.  Defendant's own focus on the Virginia Tech shootings and his reference thereto in his alleged threats, made two days after the shootings, are inextricably intertwined with the criminal charge he faces and are highly relevant.  References to incidents like the Virginia Tech shootings have been deemed crucial to the context in which threats were made, and thus more probative than prejudicial.  *E.g., United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001) ("Morales admitted that he attempted to refer to Eric Harris, one of the perpetrators of the Columbine High School killings.  Thus, his statement in context cannot be divorced from the reality of that tragedy.").  However, the government is cautioned to avoid over-emphasis on the shootings that would distract the jury from the issue to be tried.

       **IT IS SO ORDERED.**

                                              s/Sylvia H. Rambo
                                              SYLVIA H. RAMBO
                                              United States District Judge

Dated:  January 18, 2008.